CLARK, C. J., dissenting.
Civil action to set aside a judgment by default final, on the ground of surprise and excusable neglect, and at the hearing the court found the following facts:
"That suit is brought upon a judgment alleged to have been obtained by the plaintiffs against A. J. Dillard and the defendant North State Fire Insurance Company in July, 1909, at Hot Springs, Arkansas, and the same was placed in the hands of Messrs. Douglas Douglas, attorneys practicing at the Greensboro bar, for collection. That in June, 1913, Messrs. Douglas 
Douglas wrote a letter to the Dixie Fire Insurance Company, which company had merged with the North State Fire Insurance Company and assumed its liabilities, notifying it of this *Page 490 
claim. That the last named company advised Messrs. Douglas 
Douglas that they had referred the matter to their counsel, Mr. Brooks, of Brooks, Sapp Williams. That thereafter Mr. Brooks met Mr. Martin Douglas, of the firm of Douglas Douglas, and stated to him that the Dixie Fire Insurance Company was not indebted to the plaintiff, and that it had twice paid the obligation which the plaintiff was now seeking to recover, and that he would like to show him some time in his office the data to satisfy him of this fact. That no further action was taken in the matter until February, 1915, when summons was issued and served in the case. That no complaint was filed in the case (428) until 18 October, 1915. That on the same day Messrs. Douglas Douglas sent a copy of said complaint to counsel for defendant, and wrote counsel for defendant as follows:
18 October, 1915.
Schiele v. Dixie Fire.
MESSRS. BROOKS, SAPP WILLIAMS,
Attorneys at Law, Greensboro, N.C.
GENTLEMEN: — We take pleasure in herewith inclosing copy of the complaint filed in the action therein stated; and ask that you will kindly send us a copy of your answer when filed.
You may recollect that on 16 June, 1913, you wrote to us, stating that our letter of the 11th inst. had been turned over to Mr. Brooks, and that Mr. Brooks would soon take up this matter with us. Having waited a reasonable time, we issued summons and a few days ago filed complaint.
Our clients are desirous of a speedy termination of this matter, and we would be obliged if you can be ready to try this case at the next term of court. Very truly yours. (Signed) DOUGLAS DOUGLAS.
"That an order was made at the October term allowing time to file pleadings, and that a similar order was made at each term thereafter, including the last term of this court.
"That the case has never been calendared for trial, and at the meeting of the bar to prepare a calendar for last week's term of court, Mr. Martin Douglas, of the firm of Douglas Douglas, was present, and when this case was called upon the clerk's docket, Mr. Martin Douglas indicated in the usual way not to put the case in question on the calendar for trial. That on Wednesday of last week, during the session of court, Mr. Douglas stated to Mr. Shuping, who is employed in the office of Brooks, Sapp Williams, that he was going to take judgment at that term in this case unless an answer was filed, and requested that he advise Mr. Brooks of that fact. Mr. Shuping replied that he was engaged in the hearing of a case in another court, and asked Mr. Douglas *Page 491 
if he would phone Mr. Brooks or Mr. Sapp to this effect. That no notice was given to either Brooks, Sapp, or Williams of the purpose to take judgment on that day of court. That on Friday of last week answer was filed. That the judge opened court at noon on Monday of last week and left the bench at noon on Wednesday of last week, but did not adjourn court, but allowed same to expire by limitation of law. That before the expiration of said term the answer in this case was filed. That by inspection of the answer, which is duly verified, it appears that the defendant has a complete and meritorious defense to the cause of action sued upon by the plaintiff. The plaintiff procured a judgment to be signed by the judge on (429) Wednesday of last week.
"That at the bar meeting to set the next calendar after the complaint was filed, Douglas Douglas asked to have the case put on the calendar for trial; but Mr. Sapp, of the firm of Brooks, Sapp Williams, asked them to let it go over, as the answer had not been filed; this was agreed to, but told them that the answer would have to be filed by next term.
"The court further finds that one term of court had passed after the filing of the complaint and before the term at which judgment was taken."
The motion was allowed and the plaintiffs excepted and appealed.
The court finds as a fact that the defendant has a meritorious defense, and if the allegations of the answer are true, it was justified in so doing.
It appears from the answer and the findings of fact that an action was instituted in the courts of Arkansas in 1907 by one Dillard against the defendant insurance company; that the plaintiffs in this action intervened in said action for the purpose of attaching the debt due from the insurance company to Dillard; that the defendant answered in said action; that thereafter Dillard recovered judgment; that the defendant paid the full amount of this judgment into court, and an order was entered in said action, to which the present plaintiffs were parties, releasing the defendant from further liability and discharging it from the claims of attaching creditors; that thereafter and without further notice to the defendant the judgment on which this action is brought was taken in said action, and this establishes the defense of payment prima facie, which is all that is required on motions for relief for excusable neglect. *Page 492 
Has "mistake, inadvertence, surprise, or excusable neglect" been shown within the meaning of section 513 of the Revisal?
The judgment upon which the plaintiffs sue was obtained in Arkansas in 1909, and four years thereafter, in June, 1913, it was sent to attorneys at Greensboro for collection.
These attorneys made demand upon the defendant and were informed that the judgment had been paid, and were referred to the attorneys of the defendant, who were fully informed of the defense relied on.
Twenty months later this action was commenced, in February, 1915, and eight months later, in October, 1915, the complaint was filed.
An order was made at the October, November, and December Terms of 1915, extending the time for filing pleadings, and when the (430) calendar was being set for December Term, 1915, the attorneys for the plaintiff indicated that they would not ask to have this action set down for trial. The December term lasted only two and a half days, the judge presiding leaving the court at noon Wednesday.
On Wednesday, the day the judge left, counsel for plaintiff notified a young gentleman employed in the office of the attorneys for defendant that they would take judgment by default unless an answer was filed during the term, and were requested to notify counsel for defendant, which was not done, and on the same day judgment by default was taken. The judge presiding did not adjourn court when he left on Wednesday, but permitted it to expire by limitation, and the answer was filed on Friday after the judgment was entered on Wednesday.
On a similar state of facts, except they were not so favorable to the defendant, this Court refused to interfere with an order setting aside a judgment upon the ground of surprise and excusable neglect in Foley v.Blank, 92 N.C. 476, the Court saying: "The judge left the term open — to expire by its own limitation. The defendants may, therefore, have thought, and not unreasonably, that they had the right to file their answer at any time during the last day of the term, although the judge was not present. But a pleading placed on the files of the court in the absence of the judge, after he has left for the term, is not filed in contemplation of law, and we repeat, the judge ought never to leave the term open to take care of itself. Such practice has no legal sanction, and it gives rise to misapprehension, confusion, and wrong. Leaving the term of court open, to expire by its own limitation, may have led the defendants to mistake their right to file their answer at the time they undertook to do so. As they could not properly file it in the absence of the judge, they may have been surprised. Such mistake or surprise would not be unreasonable, and it would be such as would authorize the judge in a proper case, in the exercise of his sound discretion, to set a judgment aside." *Page 493 
After the long delay in prosecuting the action and in filing the complaint, and when counsel had been informed that the defense of payment would be relied on, and had indicated that they did not expect the action to be tried at the term at which judgment by default was taken, and with an order in force made at that term extending the time to file pleadings, the defendants' counsel could reasonably expect that no advantage would be taken of their failure to answer before the end of the week.
The plaintiffs' counsel seem to have felt that the circumstances required them to give notice before demanding judgment, but they did not attempt to do so before Wednesday, which left little if any time for preparing and filing the answer before the judge left at noon.
If, however, the counsel were negligent, there is no negligence (431) on the part of the defendant, and there is ample authority that when a defendant employs local counsel and informs him of his defense, so that there is nothing more for the defendant to do to put the action at issue, he will be relieved against a judgment taken for want of an answer. Griel v. Vernon, 65 N.C. 76; Bradford v. Coit, 77 N.C. 76;Ellington v. Wicker, 87 N.C. 16; Gwathney v. Savage, 101 N.C. 107;Taylor v. Pope, 106 N.C. 271; Gaylord v. Berry, 169 N.C. 733.
The Court said in the first of these cases: "In this case the party retained an attorney to enter a plea for him; that an attorney should fail to perform an engagement to do such an act as that we think may fairly be considered a surprise on the client, and that the omission of the client to examine the records in order to ascertain that it had been done was excusable neglect"; and this is quoted in the other authorities cited; and in Gwathney v. Savage, supra: "The distinction between the neglect of parties to an action and the neglect of counsel is recognized in our courts, and except in those cases in which there is a neglect or failure of counsel to do those things which properly pertain to clients and not to counsel, and in which the attorney is made to act as the agent of the client to perform some act which should be attended to by him, the client is held to be excusable for the neglect of the attorney to do those things which the duty of his office of attorney requires. It was the duty of the attorney to file the defendant's answer; if it required verification, as it did, it was his duty to inform his client of the fact. The client is not presumed to know what is necessary. `When he employs counsel and communicates the merits of his case to such counsel, and the counsel is negligent, it is excusable on the part of the client, who may reasonably rely upon the counsel's doing what may be necessary on his behalf.' Whitsonv. R. R., 95 N.C. 385. The distinction between neglect of counsel taken in Griel v. Vernon, 65 N.C. 76, has been followed by a number of cases since, and may be regarded *Page 494 
as settled." And in the last case: "If the defendant retained a reputable attorney, who regularly practiced in Brunswick Superior Court; paid him $35 as his fee; apprised him of the facts, and the attorney promised to attend court and look after the defendant's interests, all of which he says was done, and the attorney failed to file an answer, and the defendant was not in fault himself, but acted with ordinary prudence, this would constitute excusable neglect. Francks v. Sutton, 86 N.C. 78; English v. English,87 N.C. 497; Wiley v. Logan, 94 N.C. 564."
Norton v. McLaurin, 125 N.C. 185, is an illustration of the distinction between the negligence of the party and of his counsel. The action was to recover land, and a motion to set aside a judgment (432) taken by default for want of an answer was denied because of failure of the defendant to file a bond, which is a duty devolving on the party.
This statement of the law contained in the cases cited was made without regard to the solvency or insolvency of the attorney, and it has remained unchallenged for near half a century.
And why is not this the wise and just rule and in accordance with the letter and spirit of the statute?
The attorney is an officer of the court, and acts under its direction and control, and the client employs him, because of his learning and skill, to do something he cannot do for himself, and his fitness for the duty is certified to by the courts who have licensed him.
If so, and the client has been guilty of no neglect, and a valuable right has been lost by the failure of the attorney to file an answer, why should he not be relieved under a statute (Rev., sec. 513) which gives authority to the court to relieve a "party" on account of "his" surprise, etc., and which "is not restricted to cases of `excusable neglect,' but embraces cases where the judgment or other proceeding has been taken `through his mistake, inadvertence, or surprise'? These words are not mere surplusage, but mean entirely different things, though, of course, the most common instance in which this section has been invoked has been in cases of excusable neglect." Mann v. Hall, 163 N.C. 53.
The party who has employed local counsel, and who has given him all the information necessary for filing his answer, and who has omitted no duty which the law imposes on him may well claim surprise that his attorney has failed in his duty and has permitted a judgment to be taken against him for want of an answer.
It is urged, however, that this rule will encumber the dockets with motions and will delay the proceedings in the courts.
If true, this would not furnish a reason for writing into the statute what cannot be found there, that a party, who is in no default, can have *Page 495 
no relief provided his counsel is solvent; but the danger from the adoption and enforcement of the rule is more imaginary than real.
The instances in which relief is invoked under the statute are not of frequent occurrence, and as it would be based on the neglect of counsel, involving professional character and standing, it would not open up an inviting field to attorney or client.
The rule also leads to the determination of causes upon their merits, as a judgment cannot be set aside under the statute unless a meritorious defense is shown to exist.
It is no sufficient answer to say that if the attorney is solvent the party is not hurt, because he can recover the amount of his loss from the attorney.
The party may be made a bankrupt by the payment of the (433) judgment, or he may lose his home before he can sue his attorney, and when he sues he must take the chance of the jury finding the issues against him or reducing the amount of his recovery, or, if he recovers judgment, of the attorney becoming insolvent during the progress of the action.
The three cases in our Reports which give color to the contention that the party is not entitled to relief if his attorney is solvent (Universityv. Lassiter, 83 N.C. 38; Chadbourn v. Johnston, 119 N.C. 282; Ice Co.v. R. R., 125 N.C. 17) are not in conflict with the views we have expressed.
In the Lassiter case the defendant, who moved to set aside the judgment, did not employ counsel, and he paid no attention to an action commenced in 1876 until after final judgment in 1879, and relief was denied upon the ground of the negligence of the party, and not of the attorney.
In the Chadbourn case the summons was returned served, an order of sale made, a sale had thereunder, a report of sale, and a decree of confirmation, and the motion to set aside the orders and decree was not made on the ground of surprise or excusable neglect, but because it was contended by the defendant that the summons was not in fact served, and that the appearance by attorney was without authority; and in the Ice Co.case stress was laid on the fact of the insolvency of the attorney as a reason for the exercise of the discretionary power of issuing the writ ofcertiorari in lieu of an appeal, lost by the failure of the attorney to serve case on appeal within the statutory time.
We, therefore, conclude that the order of his Honor should be sustained.
Affirmed. *Page 496